LAW OFFICE OF ANDRÉA MARCUS
*A Professional Corporation*
Andréa Marcus (SBN 188098)
133 E. De La Guerra Street, #143
Santa Barbara, CA 93101-2247
Telephone: (888) 215-9021
Fax: (888) 215-9021
andrea@andreamarcuslaw.com

Attorney for Plaintiff

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| AC Cortes individually (and by and through her guardian ad litem Gustavo Cortes), and Gustavo Cortes<br><br>Plaintiffs,<br>v.<br><br>Kern County Superintendent of Schools<br><br>Defendant. | Case No.: 1:2018-cv-00909<br><br>PLAINTIFFS' FIRST AMENDED COMPLAINT<br><br>1) Damages and Injunctive Relief for Violations of the Americans with Disabilities Act;<br>2) Damages for Violations of Section 504 of the Rehabilitation Act of 1973;<br>3) Damages for Violations of the Unruh Civil Rights Act (California Civil Code §51 et. seq.)<br>4) For Appeal of a Decision of Cal. Office of Administrative Hearings Under 20 U.S.C § 1415(i)(2) and Cal. Educ. Code § 5605(k)<br>5) For Attorneys' fees and costs;<br>6) Damages for Violations of 42 U.S.C. § 1983; |

PLAINTIFFS, AC Cortes individually (and by and through her guardian ad litem

PLAINTIFF'S FIRST AMENDED COMPLAINT
AC Cortes individually (and by and through her guardian ad litem Gustavo Cortes), and Gustavo Cortes v. Kern County Superintendent of Schools (KCSOS)

1

Gustavo Cortes), and Gustavo Cortes (hereafter referred to collectively as "Plaintiffs"), allege the following regarding Kern County Superintendent of Schools (hereafter referred to as "KCSOS"), and Does 1-10, (collectively referred to as "Defendant" or "District"):

## INTRODUCTION

1. From the time she was five or six years old, AC Cortes has suffered from schizophrenia manifested by auditory, visual, and olfactory hallucinations and paranoia. KCSOS failed to provide AC appropriate mental health support beginning in 2013, and instead, encouraged her family to dis-enroll her from school, while offering Individualized Education Programs ("IEP") which named her parents as those responsible for teaching her. Her parents sought help from the Office of Administrative Hearings ("OAH"), through a Due Process hearing, in 2016. The Administrative Law Judge ("ALJ") ordered KCSOS to cease relying upon AC's parents to provide supports and services it was legally obligated to provide her, and to fund residential treatment center ("RTC") placement, where AC would receive the intensive mental health support she requires in order to learn. This decision also ordered KCSOS to pay for travel costs for family visits while AC remained residentially placed.

2. KCSOS did not appeal that decision. KCSOS has, at all relevant times since being ordered to place AC residentially by OAH, agreed that AC requires RTC placement in order to receive an education. However, in the Spring of 2017, AC became too old to continue living in the dorms of the RTC she was placed in: San Diego Center for Children ("SDCC"). After months of searching for an appropriate alternative residential placement, KCSOS offered to pay AC's parents to provide a residence during the school weeks in San Diego, so that she

PLAINTIFF'S FIRST AMENDED COMPLAINT
AC Cortes individually (and by and through her guardian ad litem Gustavo Cortes), and Gustavo Cortes v. Kern County Superintendent of Schools (KCSOS)

2

could continue to access school.

3. The fact that the Cortes family had a limited income, and could not sustain funding transporting and housing AC in San Diego themselves without funding from KCSOS, was repeatedly reported to KCSOS, and never been disputed by KCSOS.

4. September 13, 2017, KCSOS offered AC's parents $4000.00 per month, to house, transport, feed and provide mental health services to AC to replace those services she could no longer receive from SDCC, so that she could continue attending SDCC's day school program. However, due to the high cost of transportation to and from Tehachapi, and eating out in San Diego, in addition to the cost of housing, the Cortes family could not cover their costs at $4000.00 per month, when traveling from Tehachapi each week, where they maintain a separate household.

5. October 10, 2017, KCSOS offered AC's parents a "$5000.00 stipend" to house, transport, feed and provide mental health services to AC to replace those services she could no longer receive from SDCC. This time, AC's parents agreed. At this point, the Cortes family had been funding the residential component (with the exception of some pre-paid hotel nights provided by KCSOS), for months. Their credit cards had been declined, having reached their limits, and the Cortes family was out of money, as no funding had been provided to them, as had been promised, repeatedly.

6. KCSOS knowingly and with deliberate indifference to the harm it caused AC and her family, insisted upon an unworkable reimbursement model of payment (the terms of which have changed repeatedly), thereby refusing to accommodate the Cortes family's need to receive funding timely in order for AC to be able to attend school.

PLAINTIFF'S FIRST AMENDED COMPLAINT
AC Cortes individually (and by and through her guardian ad litem Gustavo Cortes), and Gustavo Cortes v. Kern County Superintendent of Schools (KCSOS)

3

## **JURISDICTION**

7. This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), 1343(a)(4), and 20 U.S.C. § 1415(i)(2) because:

   8. This action seeks redress under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq.;

   9. This action seeks redress under Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794 ("Section 504");

   10. This action seeks redress under 42 U.S.C. §1983 ("Section 1983") for the deprivation of rights secured by federal statutes; and

   11. This action also seeks redress and arises under the Individuals with Disabilities Education Improvement Act of 2004 ("IDEA") 20 U.S.C. § 1400 et seq.

12. AC Cortes has timely exhausted all of her administrative remedies.

13. This Court has jurisdiction to hear state claims under the doctrine of supplemental jurisdiction set forth at 28 U.S.C. § 1367.

## **VENUE**

PLAINTIFF'S FIRST AMENDED COMPLAINT
AC Cortes individually (and by and through her guardian ad litem Gustavo Cortes), and Gustavo Cortes v. Kern County Superintendent of Schools (KCSOS)

4

10. Venue in this Court is proper under 20 U.S.C. § 1391(b) because Defendant(s) and Plaintiff reside within Kern County, and in this judicial district and the events or omissions giving rise to the claims occurred in this judicial district.

## PARTIES

14. Plaintiff AC Cortes ("Plaintiff") is a citizen of the United States, who at all relevant times herein, resided with her parents in Tehachapi, California, which is located within Kern County and the boundaries of the Kern County Superintendent of Schools. Due to Plaintiff's diagnosis of schizophrenia manifested by auditory, visual, and olfactory hallucinations, she was and is a qualified individual with a disability within the meaning of Section 504, the ADA and the Unruh Civil Rights Act. Because of the educational impact of her schizophrenia manifested by auditory, visual, and olfactory hallucinations, AC Cortes is also a qualified child with a disability under the IDEA.

15. GUSTAVO CORTES is Plaintiff's father and guardian ad litem and is a citizen of the United States, who at all relevant times herein, resided within Tehachapi, California, which is within Kern County and the boundaries of the District.

16. Defendant KERN COUNTY SUPERINTENDENT OF SCHOOLS ("Defendant," "KCSOS" or "District") is a public-school district duly organized and existing under the laws of the State of California and is located within Kern County. At all times relevant herein, Defendant KCSOS was the local education agency responsible for providing Plaintiff with full and equal access to the public education programs, education, facilities and activities it offers in compliance with the requirements of state and federal law. Defendant KCSOS

5

PLAINTIFF'S FIRST AMENDED COMPLAINT
AC Cortes individually (and by and through her guardian ad litem Gustavo Cortes), and Gustavo Cortes v. Kern County Superintendent of Schools (KCSOS)

receives both state and federal funding.

## BASIS OF THE DISPUTE

17. District denied AC Cortes a Free, Appropriate Public Education within the meaning of the IDEA and Section 504, by failing to implement her IEP so that she could remain in school and receive the mental health and academic support she needs to be able to access an education.

18. The District also denied AC reasonable accommodations by refusing to provide the funding in a manner so that it could be used to support AC in maintaining attendance at SDCC, and instead, insisting upon reimbursement models (some according to their bookkeeping preferences), with deliberate indifference as to the harm she has suffered with the elimination of her education due to the resultant lack of funding. She has been denied access to education equal to that of her nondisabled peers.

19. AC's parents filed a complaint for due process with the Office of Administrative Hearings ("OAH") November 7, 2017, to elicit compliance with the IDEA, and specifically, agreement reached between KCSOS and the Cortes family as reflected in AC's October 10, 2017 IEP, by which KCSOS would fund the Cortes family in providing AC's residential component of her San Diego placement, as there was no other appropriate placement for her, and her family resides in Tehachapi.

20. The sole question for hearing was: "Did Kern County deny Student a free appropriate public education by failing to implement Student's October 10, 2017 individualized education program, and specifically the provision of the IEP which required Kern County to provide a stipend for the residential

PLAINTIFF'S FIRST AMENDED COMPLAINT
AC Cortes individually (and by and through her guardian ad litem Gustavo Cortes), and Gustavo Cortes v. Kern County Superintendent of Schools (KCSOS)

6

component of Student's placement at a non-public school?"

21. After two days of hearing, and full briefing by the parties, the administrative law judge ("ALJ") rendered a decision April 4, 2018, finding that: "Student did not prove that, on or before November 7, 2017, Kern County failed to implement the provision of the October 10, 2017 IEP requiring Kern County to provide a stipend for the residential component of Student's placement because Father did not unconditionally consent to either option for residential funding Kern County offered in the October 10, 2017 IEP. All relief is denied."

22. This decision was neither careful nor thorough (this ALJ has been found "neither careful nor thorough" by the Ninth Circuit Court of Appeals before), as the decision failed entirely to address legal argument, made inconsistent findings of fact and committed legal error in well-established areas of law. Plaintiffs seek a reversal of her decision in this matter.

23. This action is for damages: for violations of 42 U.S.C. § 1983; violations of the Americans with Disabilities Act; violations of section 504 of the Rehabilitation Act of 1973; violations of the Unruh Civil Rights Act (California Civil Code §51 et. seq.); 20 U.S.C. § 1400 et seq., and for Attorneys' fees and costs.

**FACTUAL ALLEGATIONS**

24. Without other options, due to her severe mental illness and geographical location (AC Cortes lives in Tehachapi, a small town with a population of roughly 13,000; and her local high school expelled her for "odd" behaviors), her parents enrolled AC in the 10th grade at Valley Oaks Charter School ("VOCS") in August 2013. VOCS is a dependent charter school authorized by KCSOS, which identified AC as a child with a disability qualifying her for

PLAINTIFF'S FIRST AMENDED COMPLAINT
AC Cortes individually (and by and through her guardian ad litem Gustavo Cortes), and Gustavo Cortes v. Kern County Superintendent of Schools (KCSOS)

7

special education supports and services pursuant to the IDEA.

25. VOCS relied upon KCSOS for personnel to provide special education support. Although AC Cortes' parents reported at each Individualized Education Program ("IEP") meeting that they were unable to teach AC Cortes at home (as her IEPs directed them to) without special education support, Respondent failed to ever offer the support AC Cortes needed to address her significant mental health disabilities. Instead, KCSOS repeatedly offered AC IEPs that named *her parents* as her educators and service providers.

26. At each IEP meeting where her parents informed KCSOS that they were unable to teach AC, or address her severe mental health needs alone, KCSOS staff would remind them of their option of dis-enrolling her from school. KCSOS sought to rid themselves of AC without offering support, in spite of the fact that KCSOS knew she had expressed suicidal ideation. KCSOS did not inform her parents of AC's suicidal ideation until it was revealed through witness testimony, months later. AC's mental health had reached a crisis, while she sat at home without education or mental health services – she attempted suicide.

27. Ultimately, AC's mental health deteriorated, and her ability to learn ceased. Her parents were forced to file a complaint with the Office of Administrative Hearings ("OAH") seeking an order making KCSOS offer mental health and teaching support in keeping with their duty under the IDEA, the American with Disabilities Act ("ADA"), and Section 504 of the Rehabilitation Act ("Section 504"), so that she could access an education.

28. This first due process hearing took nearly six months from Complaint to Decision, finally resulting in an order requiring KCSOS to fund a residential treatment center placement where AC would receive the intensive mental health and academic support and services she required to be able to learn. Due to the

PLAINTIFF'S FIRST AMENDED COMPLAINT
AC Cortes individually (and by and through her guardian ad litem Gustavo Cortes), and Gustavo Cortes v. Kern County Superintendent of Schools (KCSOS)

8

severity of AC's mental health needs, and her age, school placement options were limited. However, a placement in a residential treatment facility was located in San Diego, which would accept her.

29. KCSOS did not appeal the determination that AC required residential treatment with intensive mental health support, and has never disputed this finding by the first OAH decision.

30. Pursuant to the first OAH decision, an IEP meeting was September 21, 2016. At this IEP meeting, the IEP team agreed: 1) that AC was two years behind academically; 2) that SDCC was an appropriate placement for her, where she would receive social skills training and learn the skills she would need to transition home after school; and, 3) that she required intensive mental health supports and was unable to independently access an education due to the severity of her disability.

31. At the September 21, 2016 IEP, given the distance between San Diego, and AC's home in Tehachapi, her parents offered to transport her to SDCC, and KCSOS offered to support her parents transporting her: "[Mr. Cortes] will be reimbursed for travel expenses and hotel accommodations (per standard state per diem" (sic).

32. AC was moved to San Diego Center for Children ("SDCC"), where she began attending school, while living in the therapeutic home setting at SDCC, which included mental health support as part of her home program at the school in addition to the support she received as part of SDCC's day school program.

33. AC began attending SDCC in October 2016.

34. Unfortunately, San Diego Center for Children ("SDCC"), was unable to offer AC residential placement, once she turned nineteen. SDCC remained the only placement KCSOS offered to AC. to her as a therapeutic day school, but now,

PLAINTIFF'S FIRST AMENDED COMPLAINT
AC Cortes individually (and by and through her guardian ad litem Gustavo Cortes), and Gustavo Cortes v. Kern County Superintendent of Schools (KCSOS)

9

attending it required the residential component of her placement to be provided outside of school, and in a manner which allowed her to live locally and be transported to school daily during the week.

35. A series of IEP meetings were held between May and October of 2017, during which housing near SDCC, and other schools were considered. Ultimately, it was undisputed by the IEP team that:

   a. SDCC was an appropriate placement for AC;

   b. AC required the type of intensive supports and services provided in residential treatment centers, i.e., mental health supports and services throughout her day and as part of her living arrangement, and was unable to live independently.

   c. Regardless of extensive searching (by KCSOS placement specialist, and counsel for AC) for an alternative residential placement which she could live in past 18-years of age, none could be found anywhere, which would accept her and would be appropriate for her;

   d. AC's parents were financially disadvantaged, and could not independently fund AC's home program in San Diego: (a second home for a parent plus AC each week, plus weekly transportation and the cost of additional food and incidentals) sufficiently to support AC continuing to attend SDCC.

36. AC's parents and KCSOS agreed to collaborate to help maintain AC's placement at SDCC's therapeutic day school, while living near by with alternating parents – he mother one week, her father, the next, etc. However, initially, the amount KCSOS would offer to fund AC's parents in providing this for AC, was in dispute.

37. Initially, on September 13, 2017, KCSOS offered $4000.00 per month. However, that was not enough, given the itemized costs of transportation,

10

PLAINTIFF'S FIRST AMENDED COMPLAINT
AC Cortes individually (and by and through her guardian ad litem Gustavo Cortes), and Gustavo Cortes v. Kern County Superintendent of Schools (KCSOS)

housing, food and incidentals.

38. Eventually, an agreement was reached at the 10/10/17 IEP meeting, with KCSOS providing the SDCC day school, and a $5000.00 "stipend" for AC's parents to use in providing her with food, lodging, transportation and incidentals.

39. At all times, AC's parents were forthcoming that they lived on a very minimal and limited income, and could not sustain funding housing and transporting AC in San Diego, themselves. KCSOS has never challenged this asserted fact.

40. The October 10, 2017 IEP meeting AC's father informed KCSOS that he was out of money for food and gas and if KCSOS did not provide the agreed-upon funding by November 1st, 2017, that he would be unable to continue to bring AC to school, as his credit cards were literally ceasing to work. As of the 10/10/17 IEP meeting, Mr. Cortes had already incurred many hundreds of dollars in expenses which KCSOS had offered to reimburse, but never had – spanning over much of the prior school year, while the Cortes family provided agreed upon transportation and food and incidentals (and occasional hotel), which KCSOS had failed to pay for. The Cortes family was simply out of money.

41. Once the Cortes family ran out of funding for food and gas, they had to stop bringing AC to school, and filed their second due process complaint to once again, get OAH's help in the form of an Order that KCSOS comply with the IDEA, and provide AC a free and appropriate public Education ("FAPE").

42. It is undisputed that AC has been successful when she attended SDCC, but that her lack of attendance, and the loss of mental health supports once she was no longer offered them through her placement in the program at SDCC, significantly impacted her grades and success.

43. It is undisputed that AC's subsequent lack of attendance at SDCC, has been due to her parents' lack of funding while KCSOS failed to provide funding for her transportation and food. It is also undisputed that missing school, and missing the mental health support which had been part of her IEP before KCSOS began relying upon the Cortes family to provide her home program, has been detrimental to AC.

44. It is undisputed that being unsure whether she would be allowed to continue attending SDCC has likely been harmful to AC, and that getting resultant notices from SDCC that she was dis-enrolled due to lack of attendance were likely a source of great harm to her – something which will require assessment of harm, and therapy to address.

45. The Cortes family had to retain legal help once again, to attempt to secure educational placement for AC – this time through enforcement of the funding terms of her 10/10/17 IEP. The Cortes family filed the second due process complaint only after extensive correspondence between AC's counsel and KCSOS could not compel the funding agreed to in the 10/10/17 IEP.

46. KCSOS answered the Cortes family's complaint for due process indicating only disagreement with terms of payment, never asserting that the 10/10/17 IEP which provided the $5000.00 stipend to fund AC's home program was not consented to.

47. At all times, AC's IEP team was aware that AC's family could not sustain funding AC's home program in San Diego and yet, KCSOS continued to fail to provide funding so she could remain in the only school available to her.

48. KCSOS argued that it required a "reimbursement" arrangement with AC's parents, due to its bookkeeping policies of not providing funding up-front to families, regardless of the established fact that this was keeping AC from being

PLAINTIFF'S FIRST AMENDED COMPLAINT
AC Cortes individually (and by and through her guardian ad litem Gustavo Cortes), and Gustavo Cortes v. Kern County Superintendent of Schools (KCSOS)

12

able to attend school.

49. KCSOS was asserting that it had determined AC's IEP offer based upon KCSOS's bookkeeping policies over AC's unique needs (here, the fact that without accommodating an alternative way of funding her getting to school in SDCC, she would be unable to attend school), regardless of the fact that federal law (IDEA, 504 and ADA) preempt the District's bookkeeping policies.

50. Given that it only takes 14-days to get a check written from KCSOS. KCSOS could have provided that funding to allow AC's parents to continue to get her to school – but failed to. KCSOS could have provided gas and/or food cards, but didn't. KCSOS failed to accommodate AC's ability to attend school.

51. The current matter, in part is an appeal from a the rogue administrative hearing decision which resulted in AC being left home by KCSOS without the supports she needed to access an education.

52. This second administrative decision failed to hold KCSOS accountable for failing to provide the support and services KCSOS is legally required to provide AC, given her disabilities.

53. The administrative decision is being appealed herein.

54. Plaintiff seeks compensatory education, damages and attorneys' fees and costs.

## FIRST CLAIM FOR RELIEF

## VIOLATION OF THE AMERICAN WITH DISABILITIES ACT

## 42 U.S.C. § 12101 ET SEQ.

## AGAINST DEFENDANTS KCSOS AND DOES 1-10.

55. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 54.

56. The ADA prohibits discrimination and exclusion or denial of participation in programs based on an individual's disabilities or an individual being regarded

13

PLAINTIFF'S FIRST AMENDED COMPLAINT
AC Cortes individually (and by and through her guardian ad litem Gustavo Cortes), and Gustavo Cortes v. Kern County Superintendent of Schools (KCSOS)

as having disabilities.

57. To comply with the ADA, public entities must reasonably modify their policies, procedures or practices when necessary to avoid discrimination. The obligation to make reasonable modifications may be excused only where the public entity demonstrates that the requested modifications would "fundamentally alter" its service system. 28 C.F.R.§ 35.130(b)(7).

58. Here, because of AC's disability, she required accommodations to get her to the SDCC in order to attend school.

59. KCSOS refused to modify its funding policies such that funding was timely provided to support AC's access to school in San Diego, and doing so would not have fundamentally altered its service system.

60. KCSOS did this with deliberate indifference to the harm this failure to modify would cause to AC. Plaintiff seeks damages and attorneys' fees and costs as a result.

## SECOND CLAIM FOR RELIEF
## VIOLATION OF SECTION 504 (29 U.S.C. § 794)
## AGAINST DEFENDANTS KCSOS AND DOES 1-10.

61. Plaintiff re-alleges and incorporate by reference paragraphs 1 through 60, above.

62. Section 504 prohibits exclusion from participation, denial of benefits, or subjection to discrimination due to a person's disabilities under any program receiving federal financial assistance. It also prohibits a recipient of federal aid from aiding or perpetuating discrimination by providing significant assistance to another entity that discriminates.

63. Here, KCSOS excluded AC from her publicly funded educational placement by

making it impossible for her to get there. KCSOS did this with deliberate indifference to the harm she suffered by not having mental health services or residential support (or funding for her residential support) provided to her. Plaintiff seeks damages and attorneys' fees and costs as a result.

### THIRD CLAIM FOR RELIEF
### Violation of the Unruh Civil Rights Act
### AGAINST DEFENDANT KCSOS AND DOES 1-10.

64. AC Cortes incorporates by reference paragraphs 1 through 63 of this Complaint.

65. The Unruh Civil Rights Act (California Civil Code §51 et seq.), protects persons from discrimination on the basis of disability. The Unruh Civil Rights Act mandates that all persons are to be treated equally and entitled to full and equal accommodations, advantages, facilities, privileges or services in all business establishments of any kind regardless of disability. The Unruh Civil Rights Act prohibits the exclusion from participation in, or being subjected to disability discrimination. A violation of the ADA is a per se violation of the Unruh Act.

66. Here, AC was excluded from her public education by not being provided the minimal accommodation she required in order to access it – a modification of KCSOS's policy for funding it. Plaintiff seeks damages and attorneys' fees and costs as a result.

### FOURTH CLAIM FOR RELIEF
### APPEAL OF ADMINISTRATIVE DECISION
### VIOLATION OF 20 U.S.C. § 1400 ET SEQ., (IDEA) and

15

PLAINTIFF'S FIRST AMENDED COMPLAINT
AC Cortes individually (and by and through her guardian ad litem Gustavo Cortes), and Gustavo Cortes v. Kern County Superintendent of Schools (KCSOS)

## VIOLATION OF CAL. EDUC. CODE SEC. 56000 ET SEQ.

67. AC Cortes re-alleges and incorporates by reference as though fully set forth herein, paragraphs 1-66 inclusive of this Complaint.

68. Both the IDEA and the Cal. Educ. Code Sec. 5600 et seq. require that Defendant provide a free appropriate public education in the least restrictive environment.

69. AC Cortes is "aggrieved" by the Hearing Office Decision, as that term is used in 20 U.S.C. § 1415(i)(2)(A) and Cal. Educ. Code § 56505(k).

70. The Hearing Office Decision erred factually and legally. Her decision failed to address legal argument made by counsel for Plaintiff, and misconstrued controlling law. The ALJ's decision ignored probative evidence and made unsupported determinations of credibility.

71. The ALJ's decision was neither careful nor thorough and is owed no deference. Plaintiff seeks compensatory education to be proven at trial, and attorneys' fees and costs as a result.

## FIFTH CLAIM FOR RELIEF
## RECOVERY OF ATTORNEYS' FEES

72. Plaintiff re-alleges and incorporates by reference as though fully set forth herein, paragraphs 1 – 71 inclusive of this Complaint.

73. Plaintiff is entitled to reasonable attorneys' fees incurred during the course of those proceedings under 20 U.S.C. § 1415(i)(3)(B) & § 1415(E)(4)(B), as well as for attorneys' fees incurred in this complaint and in seeking those fees as part of this complaint. Plaintiff has incurred, and will continue to incur, substantial attorneys' fees and other costs incurred in connection with this federal district court action.

16

PLAINTIFF'S FIRST AMENDED COMPLAINT
AC Cortes individually (and by and through her guardian ad litem Gustavo Cortes), and Gustavo Cortes v. Kern County Superintendent of Schools (KCSOS)

## SIXTH CLAIM FOR RELIEF
## VIOLATION OF 42 U.S.C. § 1983

74. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 73 above.

75. Persons who act under color of state law to deprive others of rights under the laws of the United States are liable under Section 1983.

76. Defendants Does 1-10 acted under color of state law and denied Plaintiff's rights to equal access to her neighborhood school.

77. Defendants acted under color of state law and denied Plaintiff's rights to access public education by being reasonably accommodated on the basis of her disability.

78. These acts of KCSOS were willful, malicious, and oppressive which subjects them to punitive damages.

79. Plaintiff seeks damages and attorneys' fees and costs as a result.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests judgment as follows:

80. An injunction ordering KCSOS to reimburse all remaining outstanding expenses incurred by the Cortes family by providing the residential component of AC's IEP while she had been at SDCC, to include interest on credit cards holding balances resulting from relevant debt incurred.

81. Compensatory damages as proven at trial.

82. General, special and punitive damages (against individual defendants) according to proof;

17
PLAINTIFF'S FIRST AMENDED COMPLAINT
AC Cortes individually (and by and through her guardian ad litem Gustavo Cortes), and Gustavo Cortes v. Kern County Superintendent of Schools (KCSOS)

83. For the cost of suit incurred herein;

84. Award reasonable attorneys' fees and costs incurred in connection with the current proceeding for AC and Gustavo's claims including those under Section 504 of the Rehabilitation Act; under the ADA; under 42 U.S.C. § 12205; the Unruh Civil Rights Act; under 42 U.S.C. §1983; 42 U.S.C. §1988; and under any other relevant statute as appropriate; and

85. For such other and further relief as the Court deems just and proper.

Respectfully submitted,

Date: November 30, 2018

By: ANDRÉA MARCUS
Attorney for Plaintiff

PLAINTIFF'S FIRST AMENDED COMPLAINT
AC Cortes individually (and by and through her guardian ad litem Gustavo Cortes), and Gustavo Cortes v. Kern County Superintendent of Schools (KCSOS)

18